UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

**************************************************

UNITED STATES OF AMERICA,                         *

                          Plaintiff,          *

                -v-   07-CR-26              *

JOSEPH P. BROWN,                                  *

                    Defendant.          *

**************************************************


              TRANSCRIPT OF PROCEEDINGS
     BEFORE THE HONORABLE THOMAS J. McAVOY
           October 13, 2016
       445 Broadway, Albany, New York


FOR THE GOVERNMENT:

         OFFICE OF THE UNITED STATES ATTORNEY
         445 Broadway
         Albany, New York  12207
           By:  Wayne Myers, AUSA

FOR THE DEFENDANT:

         OFFICE OF THE FEDERAL PUBLIC DEFENDER
         39 North Pearl Street
         Albany, New York   12207
           By:  Gene V. Primomo, Esq.

1          COURT CLERK:  United States of America versus

2   Joseph P. Brown, case number 07-CR-26.  We are here for a

3   final supervised release violation hearing.  May we have

4   appearances for the government.

5          MR. MYERS:  Wayne Myers on behalf of the United

6   States, with me is Dan Casullo from the U.S. Probation

7   Office.

8          THE COURT:  Good morning, Mr. Myers, Mr.

9   Casullo.

10          COURT CLERK:  On behalf of the defendant.

11          MR. PRIMOMO:  Gene Primomo, your Honor, on

12   behalf of Joseph Brown.  He's present here in the

13   courtroom.  Good morning, Judge.

14          THE COURT:  Good morning, Mr. Primomo.  Good

15   morning, Mr. Brown.

16          THE DEFENDANT:  Good morning, your Honor.

17          COURT CLERK:  Mr. Primomo, Mr. Brown, would you

18   come forward to the podium?  Mr. Brown, would you raise

19   your right hand please.

20          (Whereupon, defendant placed under oath)

21          THE COURT:  All right.  Mr. Primomo, I'm sure

22   you know that your client, Mr. Brown, is before the Court

23   on four alleged violations of his conditions of

24   supervised release which are set forth in the petition

25   that's been filed by the Court.  Have you had an

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v BROWN - 07-cr-26

1    opportunity to discuss the charges made in the petition
2    with Mr. Brown?
3              MR. PRIMOMO:  Yes, I have, your Honor.
4              THE COURT:  Mr. Brown, have you read the
5    petition?
6              THE DEFENDANT:  Yes, your Honor.
7              THE COURT:  And did you talk to Mr. Primomo
8    about the charges made against you?
9              THE DEFENDANT:  Yes, I have.
10             THE COURT:  All right.  My understanding from
11   the government's position, I'm just speaking from talking
12   to probation, is that the government is taking a position
13   that they seek to have the defendant plead to all four
14   violations; is that right?
15             MR. MYERS:  That's correct, your Honor, and
16   it's my understanding from just now speaking to Mr.
17   Primomo that the defendant was --
18             THE COURT:  What?
19             MR. MYERS:  The defendant was prepared to admit
20   to all four violations.
21             THE COURT:  All right.  They are grade C
22   violations.  Mr. Primomo, you wrote me a letter and
23   pointed that out and the guideline range suggested under
24   7B1.1 and 4 is a range of three to nine months but the
25   Court has read the petition and understands what the

1    defendant is going to be admitting to and some other

2    details that haven't been fleshed out yet, either in the

3    petition or on the record, which may prompt the Court to

4    sentence him above that guideline range.  I want to make

5    sure you understand that before we proceed any further.

6              MR. PRIMOMO:  Well --

7              THE COURT:  And the alternative is, if you tell

8    me, jeez, Judge, I can't do that, my client won't --

9    doesn't want to do that, then what we are going to have

10   to do is have a hearing, which is okay.  The law provides

11   for that.  He has a right to a hearing on each and every

12   one of these charges.

13             So, Mr. Primomo, I'm sorry I cut you off.  I

14   didn't mean to.

15             MR. PRIMOMO:  Well, your Honor, there's not any

16   dispute about the violations, admissions to the

17   violation, that these are -- that he violated them.  So

18   having a contested hearing on that issue is -- is not in,

19   really, anyone's interest and not in his.  So the

20   government has provided me with the information and his

21   admissions to me and I don't have a problem, and neither

22   does he, admitting to what he did and so I appreciate,

23   you know -- the government notified me a day or two ago

24   that they were seeking an above-guideline sentence and

25   you just indicated to me again that that's a possibility

1    but there's really, other still mitigating issues that we

2    hope you would consider.

3            THE COURT:  Sure.  Mr. Myers, what would you

4    prove if we had a hearing on allegations one through four

5    in the petition?

6            MR. MYERS:  Well, your Honor, we would prove

7    that the defendant, as alleged in counts two and three,

8    used the Internet without permission.  We would also

9    prove on count four, with testimony from Officer Casullo,

10   that the defendant provided an incorrect monthly report

11   with respect to the primary account, that's the

12   unauthorized contact with the minor.  We would prove up

13   that a special agent in Alaska interviewed the

14   participant in the phone conversation; that Officer

15   Casullo found, when he conducted a home search, was on an

16   unauthorized cell phone and that interview revealed that

17   the person with whom the defendant was speaking was a

18   17-year-old female and, according to that female, the two

19   had been in touch for approximately two years and it was

20   that female's understanding that the person with whom she

21   was communicating was an approximately 20- to 21-year-old

22   male going by the name Justin Brooks.

23           Incidentally, I point out to the Court that

24   that name was a name that came up in the underlying

25   investigation, that is the reason that the defendant is

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1   on supervised release.  In other words, it was a

2   pseudonym he was using back when he was charged with the

3   child pornography offenses that gives rise to this

4   petition.

5           So the other thing that we would prove up would

6   be that the female indicated that she had been in touch

7   with other females who were communicating with the

8   defendant who they understood to be an approximately

9   20-year-old male named Justin Brooks.

10          So those are the basic contours that we would

11  prove up if they were to be contested, your Honor.

12          THE COURT:  All right, Mr. Brown.  Did you hear

13  and understand what Mr. Myers said about your conduct in

14  this case?

15          THE DEFENDANT:  Yes, I did, your Honor.

16          THE COURT:  Is that what you did?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Is that your understanding,

19  Mr. Primomo?

20          MR. PRIMOMO:  It is, your Honor.

21          THE COURT:  All right.  Well, we will proceed,

22  then, to sentence him on these four counts.

23          What would you like to say to me on behalf of

24  Mr. Brown before I sentence him?

25          MR. PRIMOMO:  In addition to my letter, Judge,

1    I think it's -- we are -- 2016, we're -- kind of have a

2    clash of technology and not just technology but

3    technology has essentially changed social network of the

4    way people communicate and one of those ways that people

5    communicate is through technology and Facebooking and

6    texting, and they communicate and they have different

7    types of relationships that didn't exist even 10 or 15

8    years ago and one of those type of relationships are

9    young people that utilize these and have communications

10   and have, quote, friends, and we have that with these

11   young people who had a relationship with what they

12   thought for a period of time before then -- before them,

13   on their own admissions, according to the statements,

14   realized that this was just a fictitious individual,

15   probably lying about his age and that was the end of it.

16            So there's this relationship that although --

17   I'm not speaking -- I'm speaking from the perspective of

18   the harm, possible harm, possible danger that these --

19   that these young women experienced.  In their world it

20   was something that is very common and extremely benign,

21   and I think it's also significant to say that the

22   government has done a pretty thorough job in these last

23   couple of weeks of tracking these individuals down and

24   interviewing them to determine whether or not that benign

25   relationship, in their perspective, was something more

1   than that, was something that was illegal beyond the

2   violation that he has to not communicate with minors as

3   part of his rules and conditions.  Specifically, trading

4   photographs, having discussions about sexual content, all

5   of which they knew, all of which didn't occur.

6           And the government's investigation didn't --

7   you know, he says it didn't and they can't prove that it

8   did.  They have all the text messages and all the

9   recorded conversations and all the interviews.

10          So, that's something that did not occur.  From

11  the perspective of Mr. Brown, I think it's -- it's

12  significant to realize that this is essentially a very

13  kind of a sad situation in the sense of the collateral

14  issues that have -- that he has faced with regards to

15  complying with supervision.  There's no question he -- he

16  violated that and here we are talking about how much --

17  how much prison time is going to be appropriate and

18  it's -- it ignores -- the government didn't -- it ignores

19  any reality that more prison time -- whether it's 3

20  months, 9 months, 24 months -- is really going to have an

21  effect, other than just giving him another opportunity,

22  when it's done, not to do this again.

23          He basically -- the conditions basically forced

24  a divide between him and his family.  He's got a young

25  son who's a second-year student studying criminal justice

U.S. v BROWN - 07-cr-26

1    at Hudson Valley Community College, and he lives in the

2    home and he's a student and he has a computer and

3    probation is required to search or ask for his consent to

4    search his computer.

5           Well, he's a young -- he's a young man and is

6    troubled by that and -- and basically Mr. Brown, not

7    wanting to put him and his family through further

8    embarrassment, does that.  Basically takes his disability

9    income and rents a small apartment which he's now lost

10   his possessions and moves out.  So at least he's

11   protecting his son to an -- to the extent that he can.

12          So it's a troubling situation.  There's quite a

13   bit of collateral issues and -- and I think what I'm

14   trying to persuade you to consider is balancing that

15   between the -- the harm that the government is, you know,

16   asserting could have occurred or occurred with these

17   young ladies.

18          And I -- my point is, Judge, there's really no

19   harm because of the nature of the communications.  Plus,

20   there was -- there's no even width of intent or factual

21   ability for him to travel anywhere to Alaska.  That was

22   something that was just -- you know, absolutely out of

23   the question and wasn't even -- wasn't even discussed or

24   talked about.

25          So he's a lonely man, he was -- he was lonelier

1    when he moved out and he did what he shouldn't have done,

2    was have these communications with these young ladies.

3    And, Judge, I just ask you to consider a sentence that's

4    just within the guidelines and eventually he's going to

5    have to deal with this and not violate again.

6            I think he's realized, he's learned -- he's

7    been in the Rensselaer County Jail now.  He had -- he's

8    alone again more so and he realizes that that's all the

9    reason -- that's all that's ever going to happen if he

10   continues to violate.

11           THE COURT:  Thank you, Mr. Primomo.  Mr. Myers?

12           MR. MYERS:  Your Honor, the defendant's conduct

13   here I think is particularly troubling given his

14   background, and if the Court were to ask any parent, this

15   young woman's parents if they thought there was harm in

16   her -- whether she was 14, 15, 16, 17 years old --

17   speaking to a 50-year-old convicted sex offender, I think

18   the parents would tell the Court and most folks off the

19   street would tell the Court there's absolutely harm in

20   that scenario, particularly when the conversation, as it

21   does here, veers into the territory about things like

22   having a boyfriend and romantic interests.

23           The Court should also be aware that we don't

24   have all of the text messages that were exchanged between

25   the defendant and the victim.  The phone records, in

U.S. v BROWN - 07-cr-26

1    fact, show a number of text messages on one of the

2    days -- this is the subpoenaed records from the phone

3    company -- more messages than were actually recovered off

4    of the defendant's phone.  So it's not a certainty that

5    all of the text messages are innocuous.  I can't

6    represent to the Court that they are salacious in some

7    way but, at the same time, we just don't know the nature

8    of all of the communications between the two of them.

9            With respect to the defendant's position -- and

10   I understand Mr. Primomo's point that conditions put

11   hardships on family members but this is a defendant who

12   clearly has not learned his lesson.  He is not respecting

13   the law, he's not been rehabilitated.  He's engaging in

14   the same conduct, using the same persona he was using

15   when he was involved in child pornography, and it is an

16   unfortunate collateral consequences but the community

17   needs to be protected, 14-year-old girls need to be

18   protected from people like the defendant that are going

19   to go online and communicate with them and misrepresent

20   who they are.

21           So for those reasons, your Honor, it's the

22   government's position that the defendant has not been

23   rehabilitated.  He's not respecting this Court's orders.

24   He's been -- violations in this case are flagrant.  They

25   went on for more than two years where he was

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1    communicating with a minor and really thumbing his nose

2    at the probation office.

3              So it's our position that a guideline sentence

4    is not adequate to reflect the seriousness of the offense

5    and that something in the range of 12 to 18 months would

6    be more appropriate, given the flagrant nature of the

7    defendant's conduct in this case.

8              THE COURT:  Thank you, Mr. Myers.  Mr. Brown,

9    would you like to say anything to me, sir, before I

10   sentence you?

11             THE DEFENDANT:  Yes, your Honor.  First, I'm

12   truly sorry for my actions.  I know -- I know I was wrong

13   but, again, just -- things were happening, the conditions

14   of supervision are, they're tough.  I mean, when I

15   have probation officers showing up at my house and going

16   through my house and my wife crying -- she's here now.

17   She has Parkinson's Disease.  I don't know if she's going

18   to make it until next Christmas.

19             These guys are coming into her house and just

20   going through stuff and telling my son they have to look

21   at his computer.  He's a college student.  He wants to

22   express his ideas and not worry about the government

23   seeing what he's doing.  So I left, which is probably

24   the dumbest thing I did because I'm isolated in this

25   little apartment in the middle of an area infested with

U.S. v BROWN - 07-cr-26

1    crack and prostitutes because I can't move into a decent

2    area as a sex offender.  I'm sitting there, I'm alone,

3    I'm afraid to have people into my apartment.  Probation

4    might show up, get embarrassed again.  I have to lie

5    about my conviction to people.  It's just -- I'm just so

6    isolated from my home and it's crazy.  I can't be who I

7    am.

8         I mean, I know I'm being portrayed as some kind

9    of monster but I'm really not and, again, I apologize and

10   it will never happen again.  It's just -- I got lonely, I

11   got desperate and I -- I did.  I spoke to this girl and

12   they were all innocuous messages.  There was never sexual

13   connotations or anything like that, which is no excuse.

14   I mean, I still did wrong.

15        I apologize to the Court and all I can do is

16   promise to try to do better.  Thank you.

17        THE COURT:  Thank you, Mr. Brown.  This is a

18   troubling situation by the Court -- for the Court and I

19   think that we talked about the victim, the young lady and

20   her family and I think that is -- that's true.  I think

21   that at that age they don't have the discretion or the

22   understanding to know the conversations you were having,

23   while perhaps not sexual in nature, are conversations

24   that were satisfying the deviate sexual interest that you

25   have and that's a problem that you are living with and

U.S. v BROWN - 07-cr-26

1    dealing with and it's a difficult problem.  The Court

2    understands that and I'm considering that.

3              And also, I agree with what you're saying about

4    the conditions of probation being difficult on your

5    family.  It's unfortunate but that's the way it is.  I

6    mean, the only alternative is to keep you in jail and not

7    put you on supervised release and that's not the right

8    thing to do, either.

9              In terms of the sentence that I gave you

10   initially, I could have given you more time, I didn't,

11   but put you on supervised release and I thought maybe you

12   would be able to follow the conditions and when you don't

13   do it and you lie about it and you're deceptive about it

14   over a long period of time, that tells me you're the one

15   that's being harmed.

16             You're the one that's in danger of going

17   forward and having your conduct escalating into conduct

18   that's going to put you behind bars for a lot more time,

19   and the Court is concerned about that and the reason the

20   probation department came to the Court was to tell the

21   Court about this situation and say, Judge, we got to do

22   something.  We just can't let this be status quo, have

23   Mr. Brown go on continuing to speak with underage

24   females.

25             Apparently there was a lady in Alaska, whose

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1  name I won't mention, was introduced to you by another

2  underaged female and I understand here there's a couple

3  more that don't want to talk to you.

4          Once again, I can't sentence you to the fact

5  that there was any sexual nature or connotations on any

6  of these contacts or conversations because I don't know

7  that there was.  So I certainly can't sentence you on

8  speculation but I can sentence you for what you did in

9  relation to what you were supposed to do and that's where

10  I'm coming from, and I think you understand it.

11          I think you're an intelligent individual.  I

12  think you have needs that are driving you that are

13  unhealthy and they are tough to live with.  I understand

14  that and, believe me, I'm sorry you're in that position

15  but I'm afraid I'm going to have to give you some time to

16  think about what you have done and what you're not going

17  to do from now on.

18          So, Court has found that the violations are all

19  grade C, your Criminal History Category is a I, and with

20  respect to the guideline Chapter 7B1.1 and 4 numbers,

21  your range would be from three to nine months and, of

22  course, the statutory maximum is 24 months.

23          So, upon your plea of guilty to the violations

24  of supervised release petition and pursuant to the

25  Sentencing Reform Act, it's the judgment of this Court

U.S. v BROWN - 07-cr-26

1   that you are hereby committed to the custody of the

2   Bureau of Prisons for a term of 14 months.

3           The Court notes for the record that this

4   sentence represents an upward departure and cites the

5   following reasons.

6           Are you okay, Mr. Brown?  Do you feel faint?

7           COURTROOM SPECTATOR:  He has cardiac problems.

8   He's got heart problems.

9           MR. MYERS:  He has some heart and blood

10  pressure --

11          THE COURT:  Do you have nitro with you?

12          THE DEFENDANT:  No, I'm all right.  I'm all

13  right.  I'm all right.

14          MR. PRIMOMO:  Sit down.

15          THE COURT:  Do you have any pain?  Dizzy?

16          THE DEFENDANT:  I'm okay, sir.

17          THE COURT:  You don't look okay.  Do you want

18  to take a five-minute break, Gene?

19          MR. PRIMOMO:  Sure.

20          THE COURT:  Let's take a five-minute break.

21          (Pause in proceeding; resumed at 9:56 A.M.)

22          THE COURT:  Mr. Primomo, if you want an

23  adjournment, I will be glad to give you one.  I don't

24  think Mr. Brown wants one but that's up to you and him.

25          COURTROOM SPECTATOR:  I don't think he's under

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1   the state to be able to make that decision right now.  I

2   really think an ambulance should be called.  I know what

3   health conditions he has and why one is not being called

4   is beyond me.  That's really injustice.

5          (Discussion held off the record)

6          THE COURT:  What do you want to do, Gene?

7          MR. PRIMOMO:  I think we can -- I've been here.

8   The record is almost complete.  If you could finish the

9   record and then going to go to get checked out by the

10  medical authorities.  He's lucid but he understands that

11  he's -- he believes he should be checked out by medical

12  emergency.  He almost passed out.  Marshals had to catch

13  him.  He sat down now for a few minutes.  He feels a

14  little bit better but he still is concerned, as everyone

15  is, about his conditions, and he understands what the

16  proceeding was to this point so we ought to just get --

17         THE COURT:  Do you understand what's going on,

18  Mr. Brown?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  Do you understand what I'm saying

21  to you?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Okay.  Well, let me finish and then

24  we can get you checked out.  That's the most important

25  part of this.  So, the Court is iterating its reasons for

1  giving an upward departure and states you've been

2  classified as a level 3 sex offender and is engaged in

3  deceptive behavior over the course of the last two and a

4  half years involving extensive communications via text

5  and phone calls with at least one known minor female.

6  Specifically, Mr. Brown represented himself as an 18- or

7  19-year-old male in -- as having similarities to the

8  original offense represented that to the -- in order to

9  maintain a virtual relationship with a minor teen.

10         The Court views the deceptive behavior as being

11 similar to the original offense conduct in that the

12 defendant sought out a minor victim -- sought out the

13 minor victim through an online chat room while posing as

14 a teen-age male.  Also note that the defendant has prior

15 violations that included admissions on two separate

16 occasions to accessing the Internet without authorization

17 for which the Court modified its conditions to include a

18 period of community confinement.  Under the false

19 pretense, the violation behavior was limited in scope and

20 not nearly as severe as what is before the Court now.

21         Upon completion of your sentence you shall be

22 placed on supervised release for life.  While on

23 supervised release you shall not commit another federal,

24 state or local crime and shall comply with the standard

25 conditions of supervision and all previously imposed

1   special conditions, as well as the following special

2   conditions:

3           You shall contribute to the cost of any

4   evaluation, testing, treatment and/or monitoring services

5   rendered in an amount to be determined by the probation

6   officer based on your ability to pay and the availability

7   of third-party payments.

8           You shall refrain from the use of alcohol and

9   be subject to alcohol testing and treatment while under

10  supervision.  You shall not have any direct contact with

11  a person under the age of 18 unless it's supervised by a

12  person approved of by the probation officer.  You shall

13  not have any indirect contact with a person under the age

14  of 18 through another person or through a device,

15  including a telephone, computer, radio or other means

16  unless it's supervised by a person approved of by the

17  probation officer.

18          You shall reasonably avoid and remove yourself

19  from situations in which you have any other form of

20  contact with a minor.  You shall not be in any area which

21  persons under the age of 18 are likely to congregate,

22  such as school grounds, childcare centers, playgrounds

23  and the like without the permission of the probation

24  officer.  You shall register with the state Sex Offender

25  Registry agency in any state where you reside or are

1   employed, carry on a vocation or are a student.  You

2   shall participate in a mental health program which shall

3   include, but not be limited to, participation in a

4   treatment program for sexual disorders, program shall be

5   approved by the United States Probation Office.

6           Your supervision may include examinations using

7   a polygraph, computerized voice stress analyzer or other

8   similar devices to obtain information necessary for

9   supervision, case monitoring and treatment.  You shall

10  answer the questions posed during the examination,

11  subject to your right to challenge in a court of law the

12  use of such statements in violations of your Fifth

13  Amendment rights.  In this regard you shall be deemed to

14  have not waived your Fifth Amendment rights.  Results of

15  any examination shall be disclosed to the United States

16  Probation Office and the Court but shall not be further

17  disclosed without the approval of the Court.

18          You shall not possess any computer data storage

19  device or Internet-capable device unless you participate

20  in computer Internet monitoring program or unless

21  authorized by the Court or U.S. Probation Office.  If

22  placed in the monitoring program, you will comply with

23  all the rules of the program, pay the costs associated

24  with the program.  U.S. Probation Office may use and/or

25  install any hardware or software system that's needed to

U.S. v BROWN - 07-cr-26

1   monitor your use of a computer and Internet-capable
2   device.
3          You shall permit the U.S. Probation Office to
4   conduct periodic, unannounced examinations of any
5   computer equipment, including any data storage device and
6   Internet-capable device you use or possess.  This
7   equipment may be removed by the U.S. Probation Office or
8   the designee for a more thorough examination.
9          You may be limited to possessing one personal
10  Internet-capable device to facilitate the probation
11  office's ability to effectively monitor your
12  Internet-related activities.  If your employment requires
13  the use of a computer, you may use a computer in
14  connection with your employment approved of by the
15  probation officer at your place of employment provided
16  you notify your employer of the nature of your conviction
17  and the fact that your conviction was facilitated by the
18  use of a computer.  Probation office must confirm your
19  compliance with this notification requirement while in
20  treatment for the remainder of the term of supervision.
21         Following completion of treatment, you shall
22  not view, possess, own, subscribe to or purchase any
23  material, including pictures, videotapes, film,
24  magazines, books, telephone services, electronic media,
25  computer programs or computer services that depicts

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

1   sexually explicit conduct as defined in 18 U.S. Code,

2   Section 2256(2).  You shall not access the Internet from

3   any computer or Internet-capable device at any location

4   unless authorized by the Court or directed by the U.S.

5   Probation Office upon approval of the Court.  This ban on

6   Internet access shall remain in effect until such time as

7   the Court determines such ban is no longer necessary

8   based on the Court's evaluation of your risk and needs,

9   along with consideration of the factors contained in

10  18 U.S. Code, Section 1355(a).

11          After considering your financial condition and

12  the sentence imposed, the Court does not impose any fine.

13  You're remanded to the custody of the U.S. Marshals in

14  accordance with the terms of this sentence.

15          Both you and the government have the right to

16  appeal this sentence under certain circumstances.  You

17  should consult with counsel to determine the viability of

18  such an appeal, and any appeal you take must be filed

19  within 14 days of the day the judgment is filed in this

20  case.

21          Okay.  Mr. Brown, I hope you feel better.

22          THE DEFENDANT:  Thank you.

23          THE COURT:  Get some help, medical help.

24          THE DEFENDANT:  Thank you.

25          THE COURT:  Court stands adjourned in this

Lisa L. Tennyson, CSR, RMR, FCRR
UNITED STATES DISTRICT COURT - NDNY

U.S. v BROWN - 07-cr-26

1    matter.

2              (Whereupon, proceeding concluded)

3                    * * * * * * * * * *

4

5

6              C E R T I F I C A T I O N

7

8

9      I, Lisa L. Tennyson, RMR, CSR, CRR, Official Court

10   Reporter in and for the United States District Court for

11   the Northern District of New York, hereby certify that

12   the foregoing 22 pages taken by me to be a true and

13   complete computer-aided transcript to the best of my

14   ability.

15

16   _____

17          Lisa L. Tennyson, R.M.R., C.S.R., C.R.R.

18

19

20

21

22

23

24

25

                 Lisa L. Tennyson, CSR, RMR, FCRR
              UNITED STATES DISTRICT COURT - NDNY